IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: NEWSTARCOM HOLDINGS, INC., et al.,<br><br>Debtor. | Chapter 7<br>Bankr. No. 08-10108 (CSS) |
| GEORGE L. MILLER, as Chapter 7 Trustee of the Estate of NewStarcom Holdings, Inc., et al.,<br><br>Appellant,<br><br>v.<br><br>MATCO ELECTRIC CORP., et al.,<br><br>Appellees. | Adv. No. 10-50036 (CSS)<br>Civ. No. 17-309-MN |

## MEMORANDUM OPINION

This dispute arose in the Chapter 7 cases of debtor NewStarcom Holdings, Inc. ("NewStarcom") and certain affiliates (together "Debtors"). Before the Court is an appeal by the Chapter 7 Trustee ("Trustee" or "Appellant"), plaintiff in the above-captioned adversary proceeding, from (1) the Bankruptcy Court's July 5, 2012 Order (Adv. D.I. 71; A266-67)[1] ("Dismissal Order") dismissing Trustee's fraudulent transfer claims against appellees Matco Electric Corporation ("New Matco") and its officers and shareholders Ronald Barber,[2] Mark Freije, and Kenneth Elliott (collectively "New Matco Defendants" or "Appellees"), and the

---

[1] The docket of the Chapter 11 cases, captioned *In re NewStarcom Holdings, Inc., et al.,* Case No. 08-10108-CSS (Bankr. D. Del.) is cited herein as "B.D.I. __." The docket of the adversary proceeding is cited herein as "Adv. D.I. __." The appendix filed in support of the Trustee's opening brief (D.I. 20) is cited herein as "A__," and the supplemental appendix filed in support of Appellees' answering brief (D.I. 24) is cited herein as "M__."

[2] Ronald Barber is now deceased. On October 23, 2017, this Court entered an Order substituting Anne M. Barber as a party to the appeal. (D.I. 15).

Bankruptcy Court's March 8, 2016 Order (A339-40), which, among other things, denied the Trustee's motion for reconsideration of the Dismissal Order for the reasons set forth in the Bankruptcy Court's accompanying opinion, *Miller v. Am. Capital, Ltd. (In re NewStarcom Holdings, Inc.)*, 547 B.R. 106 (Bankr. D. Del. 2016) (A286-338) ("Opinion"). For the reasons set forth herein, the Orders and Opinion are affirmed.

## I. BACKGROUND[3]

### A. The Transaction and Chapter 7 Cases

NewStarcom is a holding company that owns 100% of the equity in NSC Holdings, Inc. ("NSC"). NSC, in turn, held a 100% equity interest in three operating subsidiaries: Constar International, Inc. ("Constar"), Port City Electric, Inc. ("Port City"), and Matco Electric Corporation ("Old Matco"). Only NewStarcom, NSC, Constar, and Port City are Debtors in these Chapter 7 cases. In 2003, American Capital Ltd. ("ACAS" and together with certain officers and employees the "ACAS Defendants"), a publicly traded private equity firm, acquired an 80% stake in NewStarcom. (Adv. D.I. 43 (A67-159) ("the Amended Complaint") ¶ 6 (A69)). Prior to the bankruptcy, ACAS controlled the Boards of Directors of the Debtors and, through their appointed directors, exerted total control over the companies.

Constar, Port City, and Old Matco were electrical contractors operating in separate geographic areas. In 2007, after Port City experienced financial problems, NewStarcom shut down Port City and ConStar. Old Matco was not in financial trouble, and Old Matco's president, Ron Barber, was shocked when ACAS informed him that Old Matco would also be shut down. Barber asked for time to put together a purchase offer and was given a short window of time to negotiate

---

[3] A detailed factual and procedural history is set forth in the Opinion and only briefly summarized here. *See NewStarcom*, 547 B.R. at 114-17. (A285-340).

with Citizens' Bank, the Debtors' secured lender. (A293-94). During this time, Barber and Old Matco managers Mark Freije and Kenneth Elliott tried to keep the business afloat as the bank swept cash from its account, checks bounced, vendors threatened to withhold goods and services, and project owners threatened not to pay. Barber personally guaranteed $800,000 in bonding to pay vendor and employee claims. (A293-95). Barber, Freije, and Elliott formed New Matco and purchased Old Matco for $2 million, plus additional consideration including a note to the surety for $882,127 in vendor claims; a $100,000 letter of credit to the surety; Barber's personal guarantees of $990,600 on three jobs and $1 million to the surety; assumption of liability for $25 million in ongoing jobs; and the promise to keep employees for 60 days to comply with the WARN Act, 29 U.S.C. § 2102(a). (Amended Compl. at 13; A295-96, n.38). Citizens' Bank and the NewStarcom and Old Matco Boards approved the sale. (A294-96). As the Bankruptcy Court observed:

> The structure of the Old Matco sale transaction is complex, but consisted of three major parts. First, Old Matco directly sold its assets to New Matco (the "Asset Sale"). Second, the "New Matco Stock Trust" was created, with its formation documents naming New Matco as the sole beneficiary of the Trust. Third, NHI transferred its 100% equity stake in Old Matco to the New Matco Stock Trust in exchange for $1 (the "Stock Transfer").

*NewStarcom*, 547 B.R. at 133-34 (footnotes omitted). The transaction closed on December 20, 2007. On January 14, 2008, NewStarcom, NSC, and the two defunct operating subsidiaries filed voluntary Chapter 7 petitions, and Appellant was appointed as Chapter 7 Trustee.

### B. The Adversary Proceeding and the Dismissal Order

The Trustee made a pre-action discovery request to Barber pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure for documents relevant to the transaction. Barber's attorney sent the documents to the Trustee's attorneys, including a Letter of Intent regarding the transaction, and the Trustee's attorneys received those documents on December 10, 2009. The

3

following week, on December 18, 2009, the Trustee's attorney conducted a Rule 2004 Examination of Barber, questioning him about the Asset Sale to the "Purchaser" New Matco, and the Stock Transfer to the "Purchaser's designee," the New Matco Stock Trust. (*See* M28-29; M51-52). The transcript of the Rule 2004 Examination demonstrates that the Trustee's attorney addressed certain portions of the transaction but did not address the section regarding the Stock Transfer to the New Matco Stock Trust. (*See* A723-24).

On January 12, 2010, the Trustee filed his original complaint (A38-66), seeking damages arising out of the "transfer of NewStarcom's operating subsidiary Matco Electric Corporation to insiders for substantially less than its fair market value." (A68). All Defendants moved to dismiss. The Bankruptcy Court dismissed the original complaint with leave to amend, observing that "the Court's primary stumbling block has been that it cannot make heads nor tails of the complaint." (M2).

The Trustee filed the Amended Complaint on November 16, 2011, alleging claims of fraudulent transfer, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. (A67-159). The fraudulent transfer claims are Counts 5, 6, 7, and 8 of the Amended Complaint. Those claims seek (1) avoidance of a transfer under 11 U.S.C. 544 and 6 Del. C. §§ 1304 and 1305, based on the Trustee's ability to bring state law claims for alleged fraudulent transfers; (2) avoidance of a transfer under 11 U.S.C. §§ 548(a)(1)(A) and (B), which enable the Trustee to avoid transfers of property of a Debtor that are either actually or constructively fraudulent; and (3) recovery of transferred property from a transferee pursuant to 11 U.S.C. § 550. The Amended Complaint focuses on the transfer of non-Debtor Old Matco's assets to New Matco, and the Old Matco-New Matco Asset Purchase and Membership Purchase agreements are exhibits to the Amended Complaint.

4

All Defendants moved to dismiss the Amended Complaint on multiple grounds including its failure to allege a transfer of "property of the Debtor" (11 U.S.C. § 544) or "an interest of the Debtor in property" (11 U.S.C. § 548(a)(1)) as required for avoidance and recovery of fraudulent transfers under 11 U.S.C. § 544, 548, and 550. Defendants argued that the Amended Complaint alleged "in a formulaic and conclusory [manner] that property of the Debtor was transferred" however "the documents attached to the Amended Complaint as evidence of the transfer show beyond a doubt that the transferring party was not a Debtor but non-Debtor Old Matco." (A165). After oral argument on May 24, 2012, the Bankruptcy Court dismissed the fraudulent transfer claims from the bench based on the Trustee's failure to allege the transfer of property of a Debtor, which ruling was entered in the July 5, 2012 Dismissal Order. (*See* Order at A266-67; 5/24/12 Hr'g Tr. at A370-433).

### C. Summary Judgment Motion and Motion for Reconsideration

The New Matco Defendants answered the remaining claims for breach of fiduciary duty and aiding and abetting such breaches (A268-85), and the parties conducted discovery on those claims. On February 13, 2015, the New Matco Defendants moved for summary judgment on all remaining claims. In response, the Trustee asked the Bankruptcy Court to reconsider its July 5, 2012 Dismissal Order dismissing the fraudulent transfer claims. (A434-694). The Trustee asserted that the New Matco Defendants withheld responsive documents during the Trustee's Rule 2004 discovery and that, but for the New Matco Defendants' failure to produce said documents, the Trustee would have properly alleged an avoidable transfer. *See NewStarcom*, 547 B.R. at 132 (citing Adv. D.I. 167 at 1-2). The Trustee further argued that the New Matco Defendants misled both the Bankruptcy Court and the Trustee, and, therefore, reconsideration was necessary to prevent manifest injustice. *See id.* (citing Adv. D.I. 167 at 1-5).

### D. March 8, 2016 Order and Opinion

The Bankruptcy Court granted the New Matco Defendants' motion for summary judgment and denied the Trustee's Motion for Reconsideration. *NewStarcom*, 547 B.R at 112. "After a careful review of the record and prior hearings," the Bankruptcy Court reached several conclusions. First, the Bankruptcy Court believed that the Trustee had asserted an entirely new fraudulent transfer claim, "a claim that has never previously been presented to or dismissed by the Bankruptcy Court" – *i.e.*, the Stock Transfer. *Id.* Second, the Bankruptcy Court ruled that "even if the Court's earlier ruling dismissed this fraudulent transfer claim, the Trustee has failed to prove that new evidence or the concerns of justice warrant reconsideration." *Id.* Third, the Bankruptcy Court determined that "the Trustee's delay in asserting this fraudulent transfer is unacceptable." *Id.* Finally, the Bankruptcy Court ruled that "the proper defendant for the Trustee's newly asserted fraudulent transfer is the 'New Matco Stock Trust,' a party the Trustee has never named as a defendant, and therefore the claim is improperly asserted in this proceeding." *Id*.

On March 10, 2017, the Bankruptcy Court entered its Order Granting Approval of a Compromise and Settlement with a separate group of defendants, the ACAS Defendants, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A341-65) ("9019 Order"). The 9019 Order disposed of the last remaining claims in the adversary proceeding and rendered final and appealable the Orders from which the Trustee now appeals. The claims against the ACAS Defendants were resolved via the approved Compromise and Settlement Agreement, and the ACAS Defendants are not party to this appeal. (*See* Joint Status Report, D.I. 30). Thereafter, the Trustee timely appealed the Orders. (D.I. 1). The appeal is fully briefed. (D.I. 19, 20, 23, 24, 27). The docket reflects that oral argument was not requested by any party.

## II. JURISDICTION AND STANDARDS OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

## III. ANALYSIS

The Trustee appeals the July 5, 2012 and March 8, 2016 Orders seeking to revive litigation against New Matco Defendants on fraudulent transfer claims dismissed at the start of the Adversary Proceeding. The questions on appeal are whether the Bankruptcy Court (1) erred in dismissing the Trustee's fraudulent transfer claims by the Dismissal Order, and (2) erred in refusing to reconsider the Dismissal Order.

### A. The Trustee Did Not Abandon Any Claims by Virtue of his Opening Brief

As an initial matter, New Matco Defendants argue that the Trustee's opening brief addresses his § 548 claims only. (*See* D.I. 23 at 8-9). According to New Matco Defendants, the Trustee has therefore abandoned his appeal of the dismissal of his claims against the individual New Matco Defendants as well as his other fraudulent transfer claims. (*See id*.) Conversely, the Trustee asserts that he has appealed all aspects of the Bankruptcy Court's Dismissal Order dismissing his fraudulent transfer claims. (D.I. 27 at 9-10). The Court agrees with the Trustee. The Bankruptcy Court dismissed Counts 4, 5, 6, and 7 of the Amended Complaint on the basis that "there was no transfer of any interests of the debtor in property." (5/24/2012 Hr'g Tr. at 59; A428).

These four Counts are referred to throughout the Trustee's opening brief as the "fraudulent transfer claims." (*See, e.g.,* D.I. 21 at 8). The New Matco Defendants – consisting of New Matco, together with individuals Barber, Freije, and Elliott – are referred to throughout the Trustee's opening brief as well. As the New Matco Defendants point out (D.I. 23 at 9), the Trustee's arguments applicable to its § 548 claims against New Matco are also relevant to the Bankruptcy Court's dismissal of the Trustee's remaining fraudulent transfer claims: "an 11 U.S.C. § 544 avoidance claim must also involve a transfer of property of a debtor – and without avoidance under 11 U.S.C. § 544 or § 548, there can be no basis for recovery under 11 U.S.C. § 550." (*Id.*). The Trustee has not abandoned any aspect of his appeal of the Bankruptcy Court's dismissal of the fraudulent transfer claims.

### B. Dismissal of Fraudulent Transfer Claims Against New Matco

In its bench ruling, the Bankruptcy Court dismissed the fraudulent transfer claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to the adversary proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, against all Defendants on the grounds that "there was no transfer of any interests of the debtor in property." (5/24/12 Hr'g Tr. at 59 (A428); July 5, 2012 Dismissal Order (A266-67)). The Trustee asserts that the Amended Complaint contained facts sufficient to allege a transfer of property of the Debtor and that dismissal of the fraudulent transfer claims was therefore erroneous. (*See* D.I. 21 at 7-12).

After "taking note of the elements a plaintiff must plead to state a claim," a court ruling on a Rule 12(b)(6) motion to dismiss should first "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Then, if there are any "well-pleaded factual allegations," the Court should assume they are true and determine "whether they plausibly give rise to an entitlement for relief." *Id.* A "plausible" claim is one in which "the

8

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Argueta v. United States Immigration & Customs Enf't*, 643 F.3d 60, 72 (3d Cir. 2011).

A fraudulent transfer under 11 U.S.C. § 548(a)(1) requires: (1) a transfer "of an interest of the debtor in property," (2) within two years before the bankruptcy petition, and (3) either "actual intent to hinder, delay or defraud," § 548(a)(1)(A), or constructive fraud as shown by less than reasonably equivalent value in exchange for the transfer and a "badge of fraud," § 548(a)(1)(B). For purposes of fraudulent transfers, a debtor's "interest in property . . . includes any interest of the debtor that would have been preserved for the benefit of the bankruptcy estate but for the alleged transfer." *In re Besing*, 981 F.2d 1488, 1493 (5th Cir. 1993).

### 1. Allegations of a Transfer of an Interest of a Debtor in Property

The Trustee asserts that the Amended Complaint contained facts sufficient to allege a transfer of property of the Debtor. (*See* D.I. 21 at 7-12). The Trustee cites the Amended Complaint's allegation that "Defendants orchestrated, participated in and/or aided and abetted the December 2007 transfer of Old Matco to New Matco Defendants." (Amended Compl. ¶ 102; A89). This transfer was a "transfer of property, or of an interest in property, of the Debtors to and/or for the benefit of the New Matco Defendants." (*Id.* ¶ 113; A90). The Transfer was made to "the New Matco Defendants, who constituted insiders, for an amount that was – and Defendants knew to be – substantially less than Old Matco's fair market value." (*Id*. ¶ 114; A90). Despite no mention of the Stock Transfer, the Trustee cites other allegations in the Complaint (D.I. 21 at 10-11) in support of his contention "that the core of the Trustee's allegations – that old Matco was ***sold in its entirety*** to insiders for a fraction of its true value, just before the Debtors filed for bankruptcy – was sufficiently alleged in the Complaint . . ." (*Id.* at 15) (emphasis added). "[T]he

Complaint made clear that the case was based on a transfer by Debtors of their wholly-owned subsidiary, Old Matco, not just Old Matco's assets." (*Id*. at 4). The Trustee asserts that the Bankruptcy Court erred by narrowly reading the Amended Complaint to allege only a transfer of the assets of Old Matco as opposed to alleging a transfer of the entirety of Old Matco (including its stock).

New Matco Defendants argue that the Amended Complaint contains no well pleaded allegations that Debtor NSC transferred Old Matco stock to the New Matco Stock Trust; rather, it alleges transfer of non-debtor Old Matco's assets. The Third Circuit has clearly articulated that "A transfer by a non-debtor cannot be a 'fraudulent transfer.'" *Crystallex Int'l Corp. v. Petróleos de Venez., S.A.*, 879 F.3d 79, 81 (3d Cir. 2018).[4] The Trustee argues that "Paragraph 102, for example, defines the 'Transfer' as 'the transfer of Old Matco to the New Matco Defendants.'" (*Id*.). The Court agrees with New Matco Defendants. Having reviewed the Amended Complaint, the only well-pleaded allegation actually describing the transfer relates to the asset transfer from non-Debtor Old Matco. Paragraph 66 of the Amended Complaint alleges:

> 66. **By Asset Purchase Agreement and Membership Interest Purchase Agreement dated December 20, 2007, New Matco,** owned by Defendants Barber, Elliott, and Freije, **purchased Old Matco** as a going concern for $2 million – an amount which represented only a small fraction of the fair market value of the business. Copies of the Asset Purchase Agreement and Membership Interest Purchase Agreement are attached to the Amended Complaint as Exhibits I and J.

---

[4] Although *Crystallex* involved claims under the Delaware Uniform Fraudulent Transfer Act ("DUFTA"), the Third Circuit has made clear that its analysis applies equally to bankruptcy fraudulent transfer claims: "The relevant DUFTA and Bankruptcy Code provisions are nearly identical, and Delaware courts have interpreted and applied them uniformly. *Compare* 11 U.S.C. § 548 *with* 6 Del. C. §§ 1302-1306." *Crystallex*, 879 F.3d at 85-86. *See also, In re PHP Healthcare Corp.*, 128 F. App'x 839, 847 (3d Cir. 2005) ("provisions of the Delaware Fraudulent Transfer Act . . . are substantially the same as the relevant parts of the Bankruptcy Code.").

(A81) (emphasis added). Paragraph 102 goes on to define the "Transfer" complained of as the asset transfer referenced in Paragraph 66 and Exhibits I and J:

> 102. The defendants orchestrated, participated in, and/or aided and abetted the December 2007 transfer of **Old Matco to the New Matco Defendants (the "Transfer").**

(A89) (emphasis added). The Court finds no error in the Bankruptcy Court's conclusion that the Amended Complaint lacked any well pleaded assertion that the Debtor's transfer of an interest in property included the Stock Transfer.

### 2. The Amended Complaint Fails to Name New Matco Stock Trust as Defendant

The Trustee argues that nothing in the Federal Rules of Civil Procedure or the post-*Twombly*[5] case law required the Trustee to plead the factual specifics of the complicated corporate machinations orchestrated by the New Matco Defendants by which Old Matco . . . wound up in their hands." (D.I. 21 at 7). "Suffice it to say the Complaint gave the Matco Defendants fair notice of the [Trustee's] claims and the grounds upon which they rest." (*Id.*). According to the Trustee, "[n]othing more was required at the pleading stage." (*Id.*).

The Court agrees with the New Matco Defendants that the Trustee's notice argument disregards settled law that the purpose of a complaint is to "give ***the defendant*** fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. City of Allegheny*, 515 F.3d 224, 313 (3d Cir. 2008) (emphasis added). The New Matco Stock Trust is the transferee and holds the stock. The New Matco Stock Trust is a separate entity from New Matco and is governed by New York law. (M51). Under New York law, "an express trust vests in the trustee the legal estate, subject only to the execution of the trust." New York Estates, Powers and Trusts Law ("EPTL"),

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

§ 7-2.1(a). Thus, "only the trustee can sue *or be sued* in a court of law." *See, e.g.*, *Salanitro Family Trust v. Gorina*, 49 Misc. 3d 153(A) (2d Dep't 2015). Because the Amended Complaint does not name the New Matco Stock Trust (or its trustee) as a defendant in the adversary proceeding, it does not give that party any notice of the Trustee's claim to set aside the Stock Transfer. The Trustee's failure to sue the proper entity is fatal to his claim. "The majority of courts interpreting the Bankruptcy Code have declined to impose liability for fraudulent transfers on third parties who did not receive the assets in question. *Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*, 2007 WL 129003 (D. Del. Jan. 12, 2007) (citing *Mack v. Newton*, 737 F.2d 1343, 1358 (5th Cir. 1984) (to hold non-transferee liable for fraudulent transfer is inconsistent with the purpose of fraudulent transfer statutes)).

### 3. Collapsing Doctrine

The Trustee argues that the Amended Complaint's allegations "more than sufficed to implicate the avoidance statutes," especially under these circumstances, "where (1) Appellees orchestrated a complex and obfuscating series of transfers, starting with a transfer of stock from the Debtor, and (2) under applicable law, such a multi-step transaction may be 'collapsed' and considered one transfer of the Debtor's property." (D.I. 21 at 8). The Trustee argues that because the Stock Transfer and Asset Sale were related, the entire transaction was a transfer from the Debtor to Defendant New Matco. (*See id.* at 17-18) (citing *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 546-47 (D. Del. 2005). This argument also assumes that New Matco Stock Trust is a party to the adversary proceeding – it is not. *See Contemporary Indus. Corp. v. Frost*, 2001 WL 34630639, *9 (Bankr. D. Neb. Feb 14, 2001) (surveying cases that applied the collapsing doctrine and noting all entities involved in those transactions were named parties). Moreover, as the New Matco Defendants correctly point out, in *Crystallex*, the Third Circuit affirmed in part a decision

of this Court that rejected the use of the collapsing doctrine to re-characterize the parties to a transaction – the same theory that the Trustee asks this Court to accept here.

Crystallex was a Canadian gold producer that won a $1.202 billion arbitration award, confirmed by the court, against the country of Venezuela for nationalizing its gold mines. Venezuela owned all the shares of its national oil company, Petróleos (PDVSA), and government officials stated publicly that they would "proactively thwart" efforts to enforce the arbitration award in the U.S. *See Crystallex*, 879 F.3d at 82. Subsequently, PDVSA subsidiary CITGO issued $2.8 billion in debt and transferred the proceeds to a second subsidiary (PDVH), which then declared a dividend payable to the Venezuelan national oil company (PDVSA) in an effort to remove the funds to Venezuela, beyond the reach of enforcement of the arbitration award. *Id*. Crystallex, like the Trustee, argued that the multi-step transaction amounted to the transfer of property of the parent Debtor and should be collapsed. Notwithstanding the egregious facts of that case, this Court rejected the argument:

> The collapsing doctrine is often used to analyze the motivations for a transfer as opposed to whether (and when) a transfer of debtor property occurred in the first place. *See, e.g., In re Hechinger Inv. Co.* [*supra*] . . . This is not the issue the Court faces here. Rather, the DUFTA analysis focuses ***on whether and when "property of a debtor" was "transferred" and, if so, who the parties to that transfer were. The Court has not encountered any case applying the collapsing doctrine in such a circumstance.***

*Crystallex Int'l Corp. v. Petróleos de Venez., S.A.*, 213 F. Supp. 3d 683, 692-93 (D. Del. 2016) (emphasis added). On this basis, the Court dismissed the fraudulent transfer claim against CITGO because the debtor had no rights in the funds. It did not, however, dismiss the action against PDVH, reasoning that once the dividend was declared, even unpaid, it belonged to the debtor (Venezuela), making PDVH a non-debtor transferor against whom a fraudulent transfer case could be stated. *See id*. at 691. On appeal, the Third Circuit went further, dismissing the claims against

both subsidiaries for failure to allege transfer of property of the debtor. *Crystallex,* 879 F.3d at 89-90 (reversing and remanding). The collapsing doctrine is not available to re-characterize the parties to this transaction.

### C. Denial of Reconsideration

The Trustee asserts that that Bankruptcy Court compounded its error by denying the Trustee's motion for reconsideration of the July 5, 2012 Dismissal Order. *See NewStarcom*, 547 B.R at 112. In the motion for reconsideration (A434-694), the Trustee asserted that the New Matco Defendants withheld responsive documents during the Trustee's Rule 2004 discovery and that, but for New Matco's failure to produce said documents, the Trustee would have properly alleged an avoidable transfer. *See NewStarcom*, 547 B.R. at 132 (citing Adv. D.I. 167 at 1-2). The Trustee further argued that the New Matco Defendants misled both the Bankruptcy Court and the Trustee, and, therefore, reconsideration was necessary to prevent manifest injustice. *See id*. (citing Adv. D.I. 167 at 1-5).

In denying the motion for reconsideration, the Bankruptcy Court determined "[a]fter a careful review of the record and prior hearings," that with respect to the Stock Transfer, the Trustee had asserted an entirely new fraudulent transfer claim – "a claim that has never previously been presented to or dismissed by the Bankruptcy Court." *NewStarcom*, 547 B.R. at 112. Even if the Bankruptcy Court's earlier ruling had dismissed that claim, "the Trustee has failed to prove that new evidence or the concerns of justice warrant reconsideration." *Id.* The Bankruptcy Court further determined that "the Trustee's delay in asserting this fraudulent transfer is unacceptable." *Id.* Finally, the Bankruptcy Court ruled that "the proper defendant for the Trustee's newly asserted fraudulent transfer is the 'New Matco Stock Trust,' a party the Trustee has never named as a defendant, and therefore the claim is improperly asserted in this proceeding." *Id.*

14

The legal standard for reconsideration is "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the [earlier] motion . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The Court may also deny a motion for reconsideration if it is unreasonably late and thereby prejudices the opposing party. *See Standard Quimica De Venezuela v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202, 205 (D.P.R.1999); *In re Diet Drugs Prod. Liab. Litig.*, 383 F. App'x 242, 246 (3d Cir. 2010). The Trustee did not base his motion for reconsideration on a change in the law but cited the availability of new evidence and the need to correct a clear error to prevent manifest injustice.

1. **Availability of New Evidence**

Regarding "the availability of new evidence," the Trustee argued that he did not receive critical documents from Matco Defendants until January 2013. In response, the New Matco Defendants produced the affidavit of Barber's lawyer attaching the Trustee's 2004 discovery demand, the transaction documents sent in response, and the Federal Express receipt of delivery to the Trustee's counsel on December 10, 2009. In denying reconsideration, the Bankruptcy Court held that "the Defendants have demonstrated that their initial disclosures included documents detailing every portion of the Old Matco sale, including the transfer of NCS's equity." (A330-31 & n.157 (citing Adv. D.I. 178 at 12-13 (New Matco's 2009 production, which included (1) the NSC resolution approving the Stock Transfer, (2) the Letter of Intent detailing the Stock Transfer, and (3) the Stock Purchase Agreement itself)). On appeal, the Trustee does not contest the accuracy of the transaction documents or deny that his counsel received them in 2009. The Trustee repeatedly asserts that he only learned of the Stock Transfer in subsequent discovery, but this is contradicted by the record. "New evidence, for reconsideration purposes, does not refer to

15

evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Hess*, 602 F.3d at 252.

The Trustee further asserts that the multi-step nature of the transaction by which Old Matco was sold to the New Matco Defendants was "a conscious effort to obfuscate and minimize the likelihood of fraudulent transfer scrutiny." (D.I. 21 at 5-6). The Trustee asserts that the December 2007 sale by Debtor NSC of its stock in Old Matco to the [Matco Trust] was not disclosed in the Debtor's Schedule of Financial Affairs ("SOFA"), and that the Trustee reasonably relied on this. (A765-66). However, the SOFA was not signed by any of the New Matco Defendants and does not bind them. The Court agrees that once the Trustee's counsel received the transaction documents in December of 2009, any reliance on the Debtor's SOFA was no longer reasonable. The Trustee's additional arguments are unavailing.[6] These facts are insufficient to support reconsideration based on new evidence.

## 2. Correcting a Clear Error of Law or Preventing Manifest Injustice

Reconsideration is also appropriate "to correct a clear error [of law] or prevent manifest injustice." *Hess*, 602 F.3d at 251. The Trustee argued that Appellees' counsel unjustly misled both him and the Bankruptcy Court about the nature of the Old Matco-New Matco transaction. The Bankruptcy Court rejected these "wild allegations" finding no evidence that the New Matco

---

[6] The Trustee claims that Barber "lacked candor" when he was asked, "Am I correct that old Matco was purchased by an entity known as Matco Associates, Inc." (referred to herein as New Matco), and he answered, "That is correct." (*See* D.I. 21 at 4, 18). Upon review of the transcript, it appears that Barber was merely clarifying his prior testimony that Old Matco had been sold "to me," rather than to New Matco. (*See* A777). Additionally, the Trustee cites an email from a Matco attorney produced in the Rule 2004 discovery response which expresses a concern about a "collapsible" transaction. Upon review of the context of that email string, it appears that the communications address a tax concern as opposed to a bankruptcy concern. (*See* 950-52).

16

Defendants "violate[d] their duties of candor," "made false statements under oath," "mis[lead] the court" or "misrepresent[ed]" the sale transaction. *NewStarcom*, 547 B.R. at 133. While the New Matco Defendants "took no action to correct Trustee's mistakes," the Bankruptcy Court saw "no reason that [New Matco Defendants and counsel] should be sanctioned" as the Trustee had urged, "for smart and careful lawyering," as they "were under no duty to do the Trustee's job for him." *Id*. Upon review of the record, the Court finds no abuse of discretion in the Bankruptcy Court's determination that reconsideration was not warranted under these facts.

The Bankruptcy Court further determined that the addition of the new claims against the Matco Stock Trust would "greatly prejudice" the New Matco Defendants. *Id.* at 135. "[B]ecause Old Matco was a shell entity that merely held contracts that could not be assigned to New Matco, the parties would need to argue and brief a number of new questions of law, in particular how the proceeds of those contracts should be divided between Old Matco – the contracting party – and New Matco – the performing party. These new issues would, in turn, require even more discovery," elongating the case "by an uncertain, but likely substantial, period of time." Because the Trustee's delay was not the result of the New Matco Defendants' withholding of evidence, this prejudice is unacceptable and reconsideration is not warranted. *Id*.

The Trustee offers no reason to disagree with the Bankruptcy Court's careful assessment, and the Courts finds no abuse of discretion in the Bankruptcy Court's denial of the Trustee's motion for reconsideration of the July 5, 2012 Dismissal Order. The Trustee failed to demonstrate grounds for reconsideration, which is "an extraordinary means of relief, made more extraordinary by the Trustee's three year delay in seeking relief." *NewStarcom*, 547 B.R. at 132.

## IV. CONCLUSION

For the reasons set forth herein, the July 5, 2015 Dismissal Order and March 8, 2016 Opinion and Order are affirmed. A separate Order shall be entered.

September 6, 2019

_____
The Honorable Maryellen Noreika
United States District Judge